Bullard, X,
dissenting. My opinion is, that the judgment first pronounced should remain undisturbed.
We all agree, I believe, that the merits of the case are clearly with the plaintiff, and that she is entitled to some damages. The only difficulty is as to the quantum, or, in other words, whether the damages given by the jury, and sanctioned by the court below, are excessive.
After the plaintiff’s house had been demolished, the Corporation, by their attorney, justified the act of their Chief Magistrate. They answered, that they had done nothing, and intended to do nothing, except what may be authorized by law, and by the judgment, for the construction and preservation of the levée in front of the city of Lafayette. The city thus made the act their own, and should not now be listened to, when they urge that they are not responsible for the unauthorized and vindictive conduct of their agents. Those agents were acting within the sphere of their duties, and their conduct is approved by the Corporation,
As the present senior Judge said, in delivering the opinion of this court in the case of Loney v. High, 13 La. 274, which was also for damages done to property, “ there is in such cases, no certain criterion of damages.” Indeed, it seems well settled at this day, that in actions sounding in damages for torts, where the amount cannot be ascertained by computation, verdicts will *679 not be set aside, unless the amount of the damages is manifestly and palpably so enormous, as to strike the mind at once, as the result of passion or prejudice on the part of the jury. In the case of Mathews v. West, which was for trespass committed by forcibly taking and carrying away a load of peaches from the land of the plaintiff, of which she was in quiet possession, the jury gave $200 damages. A new trial was refused, because the act was committed “ in despite of the feelings of the plaintiff, and in opposition to her authority. In a case of complicated injury of this kind,” said the court, “ the rule adopted by the jury in estimating the damages, is not only correct and legal, but redounds to their credit, as it evinces a feeling on the part of the jury, friendly to the good order and well being of society, and hostile to acts of violence and force.” 2 Nott & M’Cord, 415. In Merest v. Harvey, which was an action of trespass, it appeared that the defendant, who had been notified not to sport on the plaintiff’s land, declared with an oath that he would, and accordingly fired several times upon the plaintiff’s land at birds, (which the plaintiff found,) and used very intemperate language. The jury gave £500 damages, and the court refused to set aside the verdict. Chief Justice Gibbs said: “I wish to know, in a case where a man disregards every principle which actuates the conduct of a gentleman, what is to restrain him except large damages;” and he adds, “I do not know upon what principle we can grant a rule in this case, unless we were to lay it down,, that the jury are not justified in giving more than the absolute pecuniary damages which the plaintiff may sustain.” One of the other Judges said: “ I remember a case where a jury gave £500 damages for merely knocking a man’s hat off, and the court refused a new trial.” 5 Taunton, 442.
In the celebrated case of the King’s messengers executing and endeavoring to justify under a general warrant issued by the Secretary of State, the doctrine was fully gone into. In Hinkle v. Money, the plaintiff was a journeyman printer, and arbitrarily arrested upon suspicion of haying printed the North Britain, and detained six hours, but was very civilly used; the jury gave a verdict of £300, and the court refused to set it aside as excessive, 2 Wilson, 205. In the case of Beardmore v. Carrington, which *680 was more aggravated, the plaintiff being an attorney, and his house having been entered, and his papers and books examined, and finally himself imprisoned under a similar illegal warrant, the verdict was for ¿£1000, and the court refused to interfere, and said: “ We are called upon, on our oaths, to say, whether these are excessive damages or not, and ought to have clear evidence before us, before we can say they are excessive.” The court adds : “ We desire to be understood, that this court does not say, or lay down any rule, that there can never happen a case of such excessive damages in tort where the court may not grant a new trial, but in that case the damages must be monstrous and enormous indeed, and such as all mankind must be ready to exclaim against at first blush.” 2 Wilson, 244. So, in the noted case of the Governor of Minorca, where the verdict was for £3000, the same doctrine was maintained, and it was said ; “ the jury, not the court, are to estimate the adequate satisfaction.”
Cases of the same class are innumerable in the English Reports. On one occasion the Court of King’s Bench said, they dared not set aside the verdict of the jury. A British court does not stop to estimate the value of a few birds killed, or of the grass trodden down, as the measure of damages which a jury is bound to follow ; but from motives of public policy, and for the adequate protection of private property and personal rights, sanctions exemplary damages in cases in themselves trivial, and where little real injury has been sustained. Graham on New Trials, ■passim. 4 Durnford & East, 651. 1 Durnford <fc East, 277, 3 Wilson, 62. 2 Wilson, 160. 4 Sergeant &. Rawle, 27.
Let me advert to the admitted facts in the case now before us, and see whether this court ought to send the case before another jury, on the ground of excessive damages.
The plaintiff had submitted to the judgment of the Supreme Court, and a frame house which encroached upon the street or levée according to that decision, was demolished or removed. Anxious to build so as not again to be troubled, she applied to two different surveyors, who had been successively in the employment of the city, to point out to her the lines according to the plan which had been sanctioned by the Supreme Court. She com *681 menced building a brick house upon her lot, conforming to the lines thus pointed out to her; but fearing that the city authorities would still molest her, she applied to the District Court, and obtained an injunction to restrain their proceedings until the court could pronounce upon the rights cf the parties. The injunction was duly served on the President of the Council, on the 15th of September, and on the two following days the same President went in person, with a number of laborers, and assisted in demolishing the front wall of the new house, which had already been raised as high as the second story. The side walls were also pulled down for seven or eight feet back from the front. This act was done by the President of the Council in virtue of his general power to abate nuisances, and consequently he was acting within the scope of his authority, and the Corporation is responsible for his conduct. It was done in defiance of judicial authority, to which the plaintiff had appealed for protection.
I cannot think we ought to take into consideration in what way the taxable inhabitants of the city of Lafayette are to be affected by this verdict, and that they are innocent of any wrong towards the plaintiff. We must look upon the Corporation as a legal entity, quite distinct from the persons who compose it. If the president and directors of a bank, by negligence or otherwise, render the bank liable for damages, we never consider how the interests of the stockholders are to be affected. That is a question between them and their mandataries.
Was the jury bound to make an exact calculation of the pecuniary loss actually sustained by the plaintiff in the destruction of brick and mortar, the amount of rent required to furnish her a temporary shelter, and the loss incurred by failure of her building contract? Is nothing dire for her trouble and vexation, and the expense of employing counsel, which she necessarily incurred ? Did the court, in the case above referred to of Mathews v. West, consider that the jury was bound to count the peaches taken away, and estimate their value by the dozen or the bushel, as the criterion of damages ? No. In my opinion, exemplary damages were properly given, and, although high, I know not upon what principle they can be declared excessive, according to all the precedents in the books. I venerate those precedents in *682 this class of actions, and I regard an honest jury as the only safe barrier against the abuse of petty authority. Let us not weaken those defences which our ancestors threw around them, for the protection of private property and personal rights. For my part, I rejoice that the last act of my official life consists principally in leaving on the records of this court, in which I have labored for more than eleven years, this expression of my admiration of those great principles, my abhorrence of oppression in all its forms, and of my conviction, that it is mainly by means of fearless and independent juries awarding exemplary damages, that the rights of the citizen can be adequately protected, and violence and outrage suppressed.
In the case of Herwiogene Brown v. Valery Gaudet, from the District Court of St. James, the judgment below was affirmed on appeal, in New Orleans, with damages, during the period embraced by this volume.